IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

RISA WEINBERGER, in her individual capacity,
and on behalf of herself and all similarly situated shareholders
of American Composting, Inc.     **PLAINTIFF**

VS.     Case No. 4:11-CV-848 JLH

AMERICAN COMPOSTING, INC. and
JAMES WILLITS     **DEFENDANTS**

### AMENDED COMPLAINT

Plaintiff Risa Weinberger ("Weinberger"), on behalf of herself and all similarly situated shareholders of American Composting, Inc., states as follows:

**I. PARTIES, JURISDICTION, VENUE, AND STANDING**

1. Weinberger lives and resides in Dallas, Texas, and is a minority shareholder in Defendant American Composting, Inc. ("ACI"), owning more than five percent (5%) of the outstanding shares of ACI;

2. ACI is a domestic corporation organized under the Arkansas Business Corporation Act of 1987, with its principal place of business in Pulaski County, Arkansas;

3. Defendant James Willits ("Willits") is an individual residing in Pulaski County, Arkansas;

4. Per F.R.C.P. 23.1(b)(2), this action is not a collusive one to confer jurisdiction that the Court would otherwise lack; defendant Willits is in control of ACI, complete diversity exists, the amount in controversy exceeds $75,000 and the Court has personal jurisdiction over ACI and Willits and subject matter jurisdiction over the action;

5. Venue is proper in this Court;

6. Weinberger brings this action as a derivative action under F.R.C.P. 23.1 and Ark. Code Ann. §4-27-740 (Counts I-VI below), having standing to do so as a minority shareholder on behalf of herself in that capacity and for any and all other shareholders similarly situated; additionally, Weinberger brings this action as an individual action as to Count VII below;

7. Weinberger has been a shareholder of ACI at the time of all transactions complained of herein, all of which occurred subsequent to 1997;

## II. FACTS

### Corporate Ownership and Management

8. Weinberger owns 24.5% of the outstanding shares of ACI;

9. Additionally, Weinberger holds another 24.5% of the outstanding shares of ACI as sole trustee of two trusts for the benefit of her children – the Robert Ward Fisher Management Trust and the Julie Elizabeth Fisher Management Trust, with each trust owning 12.25% of the outstanding shares of the corporation;

10. Willits is the owner of the other 51% of the outstanding shares of ACI, and is president of ACI;

11. At all relevant times, Willits has been responsible for all aspects of management and operation of ACI, including but not limited to management of corporate funds and receipt and disbursement of funds;

12. Weinberger does not and has not ever held any managerial, or other position of responsibility or employment at ACI;

13. As the majority shareholder at all relevant times, Willits has, and has had, the power to completely direct, manage, and control the operation and management of ACI, including but not limited to management of corporate funds and receipt and disbursement of funds, and has

fully exercised that power to the exclusion of all others;

### Weinberger's Request for Information from Willits

14. After receipt of ACI's 2009 federal and Arkansas tax returns and an accompanying set of financial statements in the spring of 2010, Weinberger became concerned that Willits was not managing ACI in a manner that was protective of the interests of the corporation;

15. In 2010, Weinberger became suspicious of disbursements by Willits of corporate funds for his personal use and benefit;

16. On several occasions, Weinberger requested that Willits provide financial statements and other information in order to investigate her suspicions, but Willits did not cooperate in fulfilling Weinberger's requests;

17. In 2010, Weinberger retained Arkansas attorney Eugene G. Sayre to represent her in regard to protection of her interest in ACI, including the obtaining of information from Willits;

18. In order to air her concerns and pursuant to ACI's corporate by-laws, Weinberger called a Special Shareholder's Meeting of ACI, which was held on July 1, 2010;

19. At the meeting, Weinberger identified certain corporate records she wished to have provided to her counsel Mr. Sayre, and on July 23, 2010, as a follow-up to the meeting, Mr. Sayre sent a letter to Morgan "Chip" Welch, then counsel for Mr. Willets and ACI, requesting that the documents be provided;

20. To date, some, but not all of the requested records have been provided;

### Weinberger's Review of Financial Information and Discovery of Suspicious Withdrawals and "Loans"

21. Upon obtaining some of the requested corporate records, including corporate bank statements for calendar years 2005 to 2010, and January through August of 2011, along with the corporate accounting records from June 30, 2006 through August 31, 2011, Weinberger

submitted the records to her accountant Alan Tolmas for inspection;

22. Tolmas' inspection uncovered multiple suspicious cash disbursements from the corporate bank accounts and accounting records that appear to have been made by Willits for his personal benefit;

23. These disbursements include 48 monthly checks of $5,897.26 each, payable to Willits' ex-wife, Patricia Willits, drawn on ACI's account at Bancorp South, from October 2007 through September 2011 totaling $283,068.48. These checks are in the exact amount of Willits' monthly personal obligation to pay Patricia Willits, starting in October 2007 and ending in September 2012 set forth in his September 2007 divorce decree. *Willits v. Willits*, Pulaski County Circuit Court Case No. DR-2004-5889;

24. The disbursements also include total payments of $145,789.26 to the law firm of Montgomery, Adams Wyatt, PLC; that law firm is listed in the docket sheet of the case of *Willits v. Willits* set forth above, as representing Willits in his divorce;

25. Tolmas also inspected the financial statements of the corporation for fiscal years 2006 through 2009, and the tax returns of the corporation for the tax years 2004 through 2009;

26. The inspection of the financial statements revealed an account on the corporation's balance sheet entitled "Notes Receivable – Officer", which had a balance of $5,718.90 on the fiscal year 2006 balance sheet, but had increased to $242,133.38 on the fiscal year 2009 balance sheet;

27. The inspection of the tax returns revealed a "Loans to Shareholders" balance of $21,075 in 2004; however, by 2009, that amount had increased to $333,732;

28. Weinberger has also received and reviewed the 2010 return, which revealed that the "Loans to Shareholders" balance had increased to $409,286;

29. Tolmas' inspection of the corporate accounting records revealed that the "Loans to Shareholders" balance had increased to $444,642.68 by September 9, 2011;

30. Upon information and belief, the "loans" evidenced by the "Notes Receivable – Officer" account on the corporate balance sheet, and the "Loans to Shareholders" amount appearing on the corporate tax returns represent cash disbursements by the corporation to or for the benefit of Willits;

31. Furthermore, upon information and belief, the only portion of these "loans" which is actually evidenced by a promissory note is that attributable to a promissory note executed on October 15, 2008 and effective as of October 15, 2007, in the principal amount of $37,000, providing for 59 monthly payments of $698.24 beginning January 15, 2008; the remainder is believed to have been "loaned" by the corporation to Willits without any supporting contemporaneous legal documentation;

32. Furthermore, upon information and belief, Willits has not repaid the $37,000 note according to its terms;

33. As further analysis of these amounts "loaned" by the corporation, Tolmas reviewed the corporation's bank statements to determine if any repayments had occurred on any of these "loans";

34. After reviewing the bank statements for calendar years 2005 to 2009, Tolmas discovered only one repayment by Willits, in the amount of $2,500, made on or about June 30, 2005, a year in which the outstanding balance of the "Loans to Shareholders" per the tax return increased from the prior year's tax return;

35. After inspecting the "Notes Receivable - Officer" account in the corporate accounting records, Tolmas discovered there were not any principal reductions due to loan

payments and there were General Journal entries to accrue unpaid interest expense and an entry increasing the balance by $73,879.47 with a corresponding credit to "other income";

36. Thus, it appears that Willits has caused the corporation to make "loans" to him which are not commercially reasonable and which at least partially lack any specified terms of repayment, which were not made on an arms' length basis between Willits and the corporation, and which are, in fact, a sham for Willits' using corporate funds for his personal benefit;

37. Upon information and belief, for some or all of these disbursements and "loans", ACI has received nothing of substantive value to it in return for the disbursements, so that the assets and the shareholders' equity in the corporation have been wrongfully depleted;

38. On August 30, 2011, Weinberger's counsel sent a letter attaching a draft complaint to Willits' counsel. The draft complaint asserted non-derivative claims for effectuation of stock transfers and inspection of corporate documents first requested by Weinberger in July 2010 but not provided as of the date of the letter, as well as derivative claims for misuse of corporate funds. While a substantial number of the documents have been provided in response to the letter, and Willits has cooperated as to the stock transfers, there has been no relief as to the misuse of corporate funds. A copy of the letter with draft complaint is attached as Exhibit "A";

39. In response, Willits acknowledged through his counsel that corporate funds had been used by Willits to pay both for his personal divorce attorney fees as well as divorce settlement payments to his ex-wife. Mr. Willits also through his counsel stated that he intended to present a repayment plan to ACI's Board of Directors. However, to date Willits has proposed no terms of any repayment plan, and since Willits controls the corporation, he is in a position to dictate the terms of any repayment plan regardless of how commercially reasonable it is;

40. Moreover, a proposal to work out a repayment plan with the corporation does not

meet the requirements of law, as Willits is legally liable to immediately repay all amounts that he improperly appropriated from the corporation for his personal benefit and use;

41. On or about November 4, 2011, Weinberger and her counsel received in the mail from Willits' counsel a "Notice of Special Shareholder's Meeting", attached as Exhibit "B", noticing a special meeting of shareholders eleven days later on November 15, 2011;

42. The Notice states that the agenda of the meeting would encompass, among other things, election of two new directors nominated by Willits – Mark Perry ("Perry") and David Steinmetz ("Steinmetz") - neither of whom are currently employed by ACI; however, upon information and belief, based on statements made by Willits at the November 15 meeting, Weinberger believes Perry is in the insurance business and has sold insurance products to ACI;

43. The Notice also states that the agenda would encompass amendment of the corporation's Articles of Incorporation and Bylaws;

44. The meeting took place as noticed on November 15, and Willits voted his shares in favor of election of the two new directors, while Weinberger voted all of her shares against;

45. At the meeting Willits, through his counsel, also proposed certain amendments to the Articles of Incorporation and Bylaws to be voted on by the shareholders;

46. In sum, the proposed amendments (1) enabled the two new directors to be elected at a special meeting rather than the annual meeting, and (2) allowed the corporation to take action otherwise required to be taken at a shareholder meeting to be taken without a meeting, and without having to obtain Ms. Weinberger's consent to do so, whereas the Bylaws as they existed required Ms. Weinberger's consent;

47. Willits voted all his shares in favor of the amendments, and Weinberger voted all her shares against;

48. On December 30, 2012, an annual meeting of ACI was held, which to Weinberger's knowledge and recollection was the first one ever held since she acquired and her ex-husband acquired their ownership interest in the company in 1997;

49. At the annual meeting, Willits voted all of his shares in favor of ratification of the actions at the November 15 meeting, and Weinberger voted all her shares against;

50. Also at the annual meeting, Willits nominated himself, Perry, and Steinmetz as board members to be voted upon, and Weinberger nominated herself;

51. Willits voted all of his shares for himself, Perry, and Steinmetz, and against Weinberger; and Weinberger voted all of her shares against Willits, Perry, and Steinmetz and for herself; thus, a board was elected consisting of Willits, Perry, and Steinmetz;

52. Given the timing of the noticed special meeting, and the fact that the December 30 annual meeting was the first Weinberger remembers having taken place, Weinberger believes that the actions taken at the meetings have no legitimate business purpose, were not taken in good faith, and are instead measures taken by Willits to attempt to avoid this lawsuit and to avoid liability for misappropriating corporate funds for his personal use and benefit;

53. Specifically, Weinberger believes that Willits installed Perry and Steinmetz for the purpose of creating the façade of an "independent" board of directors in order to overcome the futility exception to the demand requirement for derivative litigation, as demand would clearly be excused as futile if there were no persons other than the wrongdoer Willits who had at least official legal authority over the affairs of the corporation;

54. Regardless, as majority shareholder Willits could at any time reverse any action taken by Perry and Steinmetz by removing them from office under Ark. Code Ann. §4-27-808, so they do not insulate the corporation from Willits' complete control, or create any buffer

48. On December 30, 2012, an annual meeting of ACI was held, which to Weinberger's knowledge and recollection was the first one ever held since she acquired and her ex-husband acquired their ownership interest in the company in 1997;

49. At the annual meeting, Willits voted all of his shares in favor of ratification of the actions at the November 15 meeting, and Weinberger voted all her shares against;

50. Also at the annual meeting, Willits nominated himself, Perry, and Steinmetz as board members to be voted upon, and Weinberger nominated herself;

51. Willits voted all of his shares for himself, Perry, and Steinmetz, and against Weinberger; and Weinberger voted all of her shares against Willits, Perry, and Steinmetz and for herself; thus, a board was elected consisting of Willits, Perry, and Steinmetz;

52. Given the timing of the noticed special meeting, and the fact that the December 30 annual meeting was the first Weinberger remembers having taken place, Weinberger believes that the actions taken at the meetings have no legitimate business purpose, were not taken in good faith, and are instead measures taken by Willits to attempt to avoid this lawsuit and to avoid liability for misappropriating corporate funds for his personal use and benefit;

53. Specifically, Weinberger believes that Willits installed Perry and Steinmetz for the purpose of creating the façade of an "independent" board of directors in order to overcome the futility exception to the demand requirement for derivative litigation, as demand would clearly be excused as futile if there were no persons other than the wrongdoer Willits who had at least official legal authority over the affairs of the corporation;

54. Regardless, as majority shareholder Willits could at any time reverse any action taken by Perry and Steinmetz by removing them from office under Ark. Code Ann. §4-27-808, so they do not insulate the corporation from Willits' complete control, or create any buffer

between Willits and any decision of ACI as to whether to pursue litigation against Willits;

55. Since Willits as controlling majority shareholder can ultimately dictate the course of ACI as to all of its affairs, including any decision it would make as to Weinberger's claims, any decision by Perry and Steinmetz not to pursue the lawsuit would be tainted by the realities that they were unilaterally elected by the vote of Willits, and that Willits had the power to dictate that result by removing them from office and reversing their decision if they had decided otherwise;

56. Similarly, even if Perry and Steinmetz did vote to pursue Weinberger's claims, Willits could immediately remove them from office and reverse their decision;

57. In short, regardless of the appointment of Perry and Steinmetz or how "independent" they would otherwise be, the wrongdoer Willits unilaterally elected them to the board, and still ultimately has the unfettered ability to decide whether ACI will pursue Weinberger's claims in litigation against himself;

58. Weinberger has made no demand on the board of directors of ACI to pursue the claims asserted herein, and for the reasons previously stated, any requirement of a pre-suit demand is excused as futile;

### III. COUNT I – BREACH OF FIDUCIARY DUTY (Derivative Action)

59. Weinberger re-states, re-alleges, and incorporates by reference Paragraphs 1-58;

60. Willits, as president and majority shareholder of ACI, owed a fiduciary duty to ACI to, at all times, act in the best interest of ACI, and to manage the corporation's affairs so as to further the corporation's interests;

61. By use of his position of power and control over ACI's affairs by virtue of his position as president and majority shareholder of ACI for the purpose of causing the disbursement of corporate funds and the making of "loans" solely for his personal benefit,

Willits breached his fiduciary duty to ACI, which has resulted in damages to ACI, including but not necessarily limited to the amount of the funds wrongfully disbursed and/or "loaned";

### IV.  COUNT II – BREACH OF CONTRACT (Derivative Action)

62. Weinberger re-states, re-alleges, and incorporates by reference Paragraphs 1-61;

63. As president of ACI, Willits expressly or impliedly contracted with ACI that in exchange for good and valuable consideration, he would at all times manage the corporation so as to protect and further its best interest;

64. By engaging in the conduct previously described, Willits has breached his contractual duty to ACI, resulting in damage to ACI;

### V.  COUNT III – CONVERSION (Derivative Action)

65. Weinberger re-states, re-alleges, and incorporates by reference Paragraphs 1-64;

66. In causing the corporation to disburse corporate funds for his personal benefit, Willits wrongfully took or exercised dominion or control over the funds in violation of ACI's rights, thus converting the funds and causing damage to ACI;

### VI.  COUNT IV – PUNITIVE DAMAGES (Derivative Action)

67. Weinberger re-states, re-alleges, and incorporates by reference Paragraphs 1-66;

68. In intentionally causing corporate funds to be disbursed for his personal benefit, Willits knew or ought to have known, in light of the surrounding circumstances, that his conduct would naturally and probably result in damage to ACI, and Willits continued in such conduct with malice or with reckless disregard of the consequences from which malice may be inferred;

69. An award of punitive damages should be imposed to punish Willits for his actions and to deter Willits and others from similar conduct;

### VII. COUNT V – ACCOUNTING (Derivative Action)

70. Weinberger re-states, re-alleges, and incorporates by reference Paragraphs 1-69;

71. As president and majority shareholder of ACI, Willits stands in a fiduciary and trust relationship with ACI and because of this trust relationship has been entrusted with ACI's property;

72. Willits should be compelled by the Court to render an account of his actions with regard to ACI's funds;

73. Willits should be ordered to restore any amounts found to be due and owing from Willits due to any mismanagement or misappropriation of ACI's funds;

### VIII. COUNT VI – PRELIMINARY AND PERMANENT INJUNCTION (Derivative Action)

74. Weinberger re-states, re-alleges, and incorporates by reference Paragraphs 1-73;

75. As a result of the previously described actions of Willits in causing the corporation to make disbursements for the sole benefit of Willits and with nothing of value in return to the corporation, the corporation is suffering, and will continue to suffer, permanent, recurring, and irreparable harm in the form of depletion of its assets and resulting diminution in the shareholders' equity in the corporation, for which there is no adequate remedy at law;

76. Weinberger is entitled to a temporary and permanent injunction prohibiting Willits from making any further disbursements out of the corporation for his own benefit and without equivalent value returning to the corporation, and from making "loans" to himself from the corporation which are not commercially reasonable, which lack any specified terms of repayment, and which are not made on an arms' length basis between Willits and the corporation;

### IX. COUNT VII – BREACH OF FIDUCIARY DUTY TO MINORITY SHAREHOLDER (Individual Action)

77. Weinberger re-states, re-alleges, and incorporates by reference Paragraphs 1-76;

78. As majority shareholder of ACI, a closely held corporation, Willits owes, and at all relevant times owed Weinberger a fiduciary duty to manage ACI in a manner that is not oppressive to Weinberger and does not substantially diminish the value or defeat the reasonable expectation of Weinberger as to her investment in ACI;

79. Weinberger and/or her ex-husband Fisher have contributed hundreds of thousands of dollars of capital to ACI;

80. Weinberger made her investment in ACI with the reasonable expectation that Willits would at all times manage the corporation so as to not deplete the assets of the corporation, and correspondingly the value of Weinberger's investment, by appropriating corporate funds for his personal use and benefit;

81. In taking the actions described above, including the appropriation of corporate funds for his personal use and benefit, Willits has breached his fiduciary duty to Weinberger, defeating the reasonable expectations of Weinberger that she receive a reasonable return on her investment in ACI and that the value of her investment in ACI not be substantially diminished;

82. As a result of Willits' breach, Weinberger has suffered damages;

83. Weinberger demands a trial by jury.

WHEREFORE, Weinberger prays that the Court:

(1) Enter judgment against Willits in favor of ACI in the amount of any and all disbursements of corporate funds wrongfully made or caused to be made by Willits for his personal benefit or use together with interest as provided by law;

(2) Order Willits to render an accounting of his actions with regard to ACI's funds;

(3)     Order Willits to restore to ACI any corporate funds he wrongfully disbursed or caused to be disbursed for his personal benefit together with interest as provided by law;

(4)     Award punitive damages in favor of ACI sufficient to punish Willits and deter Willits and others from similar conduct in the future;

(5)     Temporarily and permanently enjoin Willits from making any further disbursements out of the corporation for his own benefit and without equivalent value returning to the corporation, and from making "loans" to himself from the corporation which are not commercially reasonable, which lack any specified terms of repayment, and which are not made on an arms' length basis between Willits and the corporation;

(6)     Award Weinberger damages suffered as a result of Willits' breach of fiduciary duty to her as minority shareholder;

(7)     Award costs and attorney fees; and

(8)     Award all other proper relief.

                            Respectfully submitted,

                            H. WILLIAM ALLEN (ABN 69001)
                            BROOKS C. WHITE (ABN 2000093)
                            WILLIE S. HALEY (ABN 2009207)
                            ALLEN LAW FIRM, P.C.
                            212 Center Street, 9th Floor
                            Little Rock, Arkansas 72201
                            (501) 374-7100
                            hwallen@allenlawfirmpc.com
                            bcwhite@allenlawfirmpc.com
                            wshaley@allenlawfirmpc.com

                            By:/s/ H. William Allen
                                  H. William Allen
                            By:/s/ Brooks C. White
                                  Brooks C. White
                            By:/s/ Willie S. Haley
                                  Willie S. Haley

Attorneys for Plaintiff

## VERIFICATION

(State of Texas      )
                     )ss
(County of Dallas    )

I, Risa Weinberger, being first duly sworn, say I am the plaintiff in the above entitled action, that I have read the foregoing complaint, and that the same is true to the best of my knowledge and belief.

_____
Risa Weinberger

SUBSCRIBED AND SWORN to before me, a Notary Public, on this 12th day of January, 2012.

_____
Notary Public

My Commission Expires:

8|5|14

DLON M. KNOX
Notary Public
State of Texas
My Comm. Expires 08-05-2014

## CERTIFICATE OF SERVICE

I, Brooks C. White, hereby certify that on this 12th day of January, 2012, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System which will send notification of such filing to the following attorneys of record:

Samuel E. Ledbetter, Esq.
McMath Woods, P.A.
711 West Third Street
Little Rock, Arkansas  72201
sam@mcmathlaw.com

Robert Hardin, Esq.
David Grace, Esq.
Hardin & Grace, P.A.
500 Main Street, Suite A
P.O. Box 5851
North Little Rock, Arkansas  72119
bhardin@hardingrace.com
dgrace@hardingrace.com

/s/ Brooks C. White
Brooks C. White