# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
### WESTERN DIVISION

RISA WEINBERGER, in her individual capacity,                                    PLAINTIFF
and on behalf of herself and all similarly situated
shareholders of American Composting, Inc.

v.                                    No. 4:11CV00848 JLH

AMERICAN COMPOSTING, INC.;
and JAMES WILLITS                                                               DEFENDANTS

## OPINION AND ORDER

Risa Weinberger brings this shareholder derivative suit on behalf of American Composting, Inc., against James Willits, American Composting's majority shareholder, alleging breach of fiduciary duty, breach of contract, and conversion. Weinberger also brings an individual action against Willits, alleging that Willits breached his fiduciary duty to her as a minority shareholder. American Composting has moved to dismiss Weinberger's shareholder derivative claims under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted. American Composting argues that Weinberger has failed to allege with sufficient particularity that a pre-lawsuit demand upon American Composting would have been futile. For the following reasons, the Court denies the motion.

## I.

In ruling on a motion to dismiss, the Court must accept as true all factual allegations in the complaint and review the complaint to determine whether its allegations show that the pleader is entitled to relief. *Schaaf v. Residential Funding Corp.*, 517 F.3d 544, 549 (8th Cir. 2008). All reasonable inferences from the complaint must be drawn in favor of the nonmoving party. *Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 590 (8th Cir. 2004). The Court need not,

however, accept as true legal conclusions, even those stated as though they are factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949-50, 173 L. Ed. 2d 868 (2009).

## II.

The following facts are taken from Weinberger's amended complaint and the documents attached or referenced therein.  Document #14.[1]

American Composting is a domestic corporation organized under Arkansas law.  Practically speaking, American Composting has two shareholders, Willits and Weinberger.  Willits owns 51 percent of American Composting's outstanding shares, serves as the company president, and is responsible for all aspects of the company's management and operation.  Weinberger owns 24.5 percent of American Composting's outstanding shares and controls another 24.5 percent in her position as the sole trustee for her children.  Weinberger has never held any managerial or other position of responsibility or employment with American Composting.

After receiving American Composting's tax returns and other financial documents in 2009 and 2010, Weinberger became concerned that Willits was mismanaging the company and using corporate funds for his personal benefit.  Weinberger requested various financial statements and other information from Willits, who did not fully cooperate with the requests.  Weinberger then called a special American Composting shareholders' meeting, which was held on July 1, 2010.  At and after

---

[1]The Court, in its discretion, has excluded all information pertaining to events that happened after the filing of Weinberger's original complaint, as the information is not necessary to, and would not alter, its decision. *See McCall v. Scott*, 239 F.3d 808, 815 (6th Cir. 2001) (evaluating demand futility as of the date the first derivative claims were made). *Cf.* 7C Wright, Miller, & Kane, Federal Practice and Procedure: Civil 3d § 1831, 118-19 ("[T]he court has discretion to allow outside materials to be introduced or to hold a hearing on the issue whether the demand on the directors should be excused . . . .").

the meeting, Weinberger requested that Willits provide certain corporate records.  Some, but not all, of the records were provided.

Weinberger submitted the various records that she did obtain to her accountant, who discovered that multiple cash disbursements had been made from American Composting's corporate bank accounts for Willits' benefit.  The disbursements included payments to Willits' ex-wife totaling $283,068.48, and payments to the law firm that represented Willits in his divorce totaling $145,789.26.  The documents showed a "Loans to Shareholders" balance that increased from $21,075 in 2004 to $444,642.68 by September 9, 2011.  The only loan evidenced by a promissory note was a loan in the amount of $37,000, and Willits was not repaying that loan according to the terms of the note.  The records demonstrated that only $2,500 had been repaid from the loans, and that there were no specific repayment plans or collateral presented in return.  Weinberger alleges that these loans are shams and that Willits has used corporate funds for his personal benefit.

On August 30, 2011,  Weinberger's counsel sent a letter to Willits' counsel with a draft complaint detailing, among other things, potential shareholder derivative claims.  While Willits provided a substantial number of documents in response to the letter, and he cooperated regarding various stock transfers in question, he did not provide any solution or relief as to the alleged misuse of corporate funds.  After the letter was received, Willits acknowledged through his counsel that the corporate funds had been used for his divorce-related issues and stated that he intended to present a repayment plan to American Composting's board of directors.

Around November 4, 2011, Weinberger received a letter from Willits' counsel giving notice of a special American Composting shareholders' meeting to be held on November 15, 2011.  Willits stated in the letter that issues to be considered at the meeting were amendment of American

Composting's articles and by-laws and election of directors.  Specifically, the letter stated that Willits would nominate David Steinmetz and Mark Perry to "fill the two empty positions of director." Willits added that the "intent of the expansion of the board of directors is to elect independent members . . . who may immediately continue the investigation of allegations by a shareholder that the Corporation has claims against the current director, James R. Willits, and to direct the operations of the Corporation in the future."  Neither Steinmetz nor Perry was employed by American Composting, although Weinberger believes that Perry has sold insurance products to American Composting.  At the November 15 meeting, Willits voted all his shares in favor of the amendments and two new directors, guaranteeing their success, while Weinberger voted her shares against these actions.  Perry and Steinmetz were elected, and the amendments passed.  According to Weinberger, the amendments: (1) enabled the two new directors to be elected at a special meeting rather than an annual meeting; and (2) allowed the corporation to take action without a meeting at all, and without Weinberger's consent, as had previously been required.

Two weeks later, at the end of November, Weinberger filed her original complaint with this Court.  In the complaint, Weinberger alleged that the actions taken at the November 15 meeting had no legitimate business purpose, were not taken in good faith, and were purely an attempt to avoid the lawsuit.  Thus, she alleged, "since Willits is both the party accused of wrongdoing against the corporation as well as the individual who completely controls the corporation, the requirement of a pre-suit demand should be excused as futile . . . ."

On January 12, 2012, Weinberger filed her amended complaint in this action, alleging many of the same claims and facts as the first complaint.  Weinberger states in her amended complaint that she "has made no demand on the board of directors of [American Composting] to pursue the claims

asserted herein" because such a demand would be futile.  To support her claim of demand futility, Weinberger alleges as follows:

> 52.  Given the timing of the noticed special meeting . . .Weinberger believes that the actions taken . . . have no legitimate business purpose, were not taken in good faith, and are instead measures taken by Willits to attempt to avoid this lawsuit and to avoid liability for misappropriating corporate funds for his personal use and benefit;
>
> 53.  Specifically, Weinberger believes that Willits installed Perry and Steinmetz for the purpose of creating the facade of an "independent" board of directors in order to overcome the futility exception to the demand requirement for derivative litigation, as demand would clearly be excused as futile if there were no persons other than the wrongdoer Willits who had at least official legal authority over the affairs of the corporation;
>
> 54.  Regardless, as majority shareholder Willits could at any time reverse any action taken by Perry and Steinmetz by removing them from office under Ark. Code Ann. § 4-27-808, so they do not insulate the corporation from Willits' complete control, or create any buffer between Willits and any decision of [American Composting] as to whether to pursue litigation against Willits;
>
> 55.  Since Willits as controlling majority shareholder can ultimately dictate the course of [American Composting] as to all of its affairs, including any decision it would make as to Weinberger's claims, any decision by Perry and Steinmetz not to pursue the lawsuit would be tainted by the realities that they were unilaterally elected by the vote of Willits, and that Willits had the power to dictate that result by removing them from office and reversing their decision if they had decided otherwise;
>
> 56.  Similarly, even if Perry and Steinmetz did vote to pursue Weinberger's claims, Willits could immediately remove them from office and reverse their decision;
>
> 57.  In short, regardless of the appointment of Perry and Steinmetz or how "independent" they would otherwise be, the wrongdoer Willits unilaterally elected them to the board, and still ultimately has the unfettered ability to decide whether [American Composting] will pursue Weinberger's claims in litigation against himself;

Document #14, at 8-9.

It is over the legal sufficiency and particularity of this specific language, and Weinberger's allegations in general, that the present dispute lies.  American Composting argues that Weinberger has failed to allege sufficiently that a pre-lawsuit demand upon American Composting to take legal

action would have been futile, as is required by Ark. Code Ann. § 4-27-740 and Federal Rule 23.1. American Composting specifically contends that Weinberger does not allege with sufficient particularity or facts why the American Composting board of directors is not disinterested or independent.  Weinberger argues the opposite: that her complaint sufficiently alleges her reasons for not making a demand.

## III.

The United States Supreme Court has held that questions concerning demand futility involve substantive law, and are therefore governed by the law of the state of incorporation of the company being sued.  *See Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 108-09, 111 S. Ct. 1711, 1723, 114 L. Ed. 2d 152 (1991); *Berry ex rel. Dillard's, Inc.,* --- S.W.3d — , 2011 Ark. App. 242, 2011 WL 1144697, *5 (Ark. App. 2011) (citing *Kamen* and applying Delaware law to a shareholder derivative suit involving a Delaware corporation); *In re AFC Enters., Inc. Derivative Litig.,* 224 F.R.D. 515, 518 (N.D. Ga. 2004) ("Although the [Federal Rule 23.1] pleading requirement is a matter of federal procedure, whether demand on the corporation would have been futile is a matter of . . . state law.").  It is undisputed that American Composting was incorporated in Arkansas, so the Court will apply Arkansas law, where possible.

The law encourages corporations to address problems internally.  Thus, in general, a shareholder cannot bring an action in his own name to enforce a corporation's rights; rather, such an action must be authorized by the board of directors and brought by the corporation itself. *Red Bud Realty Co. v. South*, 153 Ark. 380, 241 S.W. 21, 27 (1922).  If a shareholder makes a demand upon the board of directors to prosecute alleged wrongs, however, and the demand is refused or ignored, the shareholder may then bring a shareholder derivative suit to enforce the corporation's rights.

*Berry*, 2011 WL 1144697 at *6; *see also Ono v. Itoyama*, 884 F. Supp. 892, 899 (D.N.J. 1995).  The

shareholder may only bring such a suit without making a demand if the demand would be futile.  *Ono*,

884 F. Supp. at 899; *see also Allright Mo., Inc. v. Billeter*, 829 F.2d 631, 639 (8th Cir. 1987).

One consequence of the law's encouragement of internal resolution of corporate problems

is that the pleading requirements in a shareholder derivative suit are generally far more demanding

than typical permissive notice pleading. *See Berry,* 2011 WL 1144697 at *8; *McCall*, 239 F.3d at 815

(both citing *Brehm v. Eisner*, 746 A. 2d 244, 254 (Del. 2000)).  Arkansas requires a shareholder

derivative complaint to "allege with particularity the demand made, if any, to obtain action by the

board of directors and either that the demand was refused or ignored or why he did not make the

demand." Ark. Code Ann. § 4-27-740(b).[2]  The primary Arkansas case explaining demand futility

pleading appears to be *Morgan v. Robertson*, a 1980 opinion from the Arkansas Court of Appeals,

271 Ark. 461, 609 S.W.2d 662 (Ark. App. 1980).[3]  *Morgan* stated that "there is no absolutely certain

test" for demand futility, as such questions are decided on a case-by-case basis and determined largely

by the particular circumstances. 271 Ark. at 467, 609 S.W.2d at 665 (citation omitted); *see also*

*Vernars v. Young*, 539 F.2d 966, 968 (3rd Cir. 1976) ("[T]he issue is an intensely factual one.").

*Morgan* then quoted *Red Bud Realty*:

> The law does not require a futile ceremony. Therefore, where a majority of the
> directors are under the control of a majority of the stockholders, and an action is

---

[2]Section 4-27-740(b) generally tracks Federal Rule 23.1(b), which requires a plaintiff to "state with particularity: (A) any effort by the plaintiff to obtain the desired action from the directors or comparable authority . . . and (B) the reasons for not obtaining the action or not making the effort." Notably, Arkansas Rule of Civil Procedure 23.1 is nearly identical to Federal Rule 23.1.

[3]*Morgan* was decided seven years before the enactment of Ark. Code Ann. § 4-27-740(b), so it obviously does not discuss the statute.  As detailed in the previous footnote, however, § 4-27-740(b) contains the same basic demand futility requirements as Arkansas Rule 23.1, which *Morgan* expressly covered.  The Court sees no reason to ignore *Morgan*, which is still valid law.

> brought against them by an innocent shareholder in his own name . . . it is not
> necessary for him to allege and prove, as a condition precedent to the maintenance of
> the action, that, before instituting the same, he protested to the board of directors
> against their own mismanagement and appealed to them for redress. Such protest
> would fall upon deaf ears, because a majority of the directors could not be expected
> to authorize, or to institute, an action against themselves charging themselves with
> fraud.  If they should do such an anomalous thing, in the language of the Supreme
> Court of Missouri, "the bad faith of their action would be so apparent that no court
> would entertain the suit."

271 Ark. at 467, 609 S.W.2d at 665 (quoting *Red Bud Realty*, 241 S.W. at 27).  *Morgan* states that

demand should not be required where it is apparent that it would be useless because the directors

participated in the alleged wrongdoing, the alleged wrongdoers dominated or controlled the directors,

or the directors profited from the alleged wrongdoing.  271 Ark. at 467-68, 609 S.W.2d at 665

(citations omitted).

In the present case, Weinberger does not claim that Steinmetz and Perry participated in or

profited from the alleged wrongdoing—she only accuses Willits of doing so.  Rather, she contends

that demand would be useless because Willits controls or dominates Steinmetz and Perry, who

constitute a majority of the board of directors.

Arkansas case law does not provide a detailed explanation of what constitutes domination or

control, so the Court will attempt to infer how Arkansas courts might view the issue.  As American

Composting has pointed out, it is likely that Arkansas courts would look to Delaware law for

assistance.[4]  Thus, this Court will primarily look to *Berry*, where the Arkansas Court of Appeals

---

[4]Several states have adopted statutory language nearly identical to Ark. Code Ann. § 4-27-
740(b).  *See, e.g.*, Ky. Rev. Stat. § 271B.7-400(2) (Kentucky); Ind. Code § 23-1-32-2 (Indiana);
Wash. Rev. Code 23B.07.400(2) (Washington).  When interpreting these provisions, state courts
often rely heavily upon Delaware law.  *See Allied Ready Mix Co. ex rel. Mattingly v. Allen*, 994
S.W.2d 4, 8 (Ky. App. 1998) ("Delaware cases are the leading cases in this subject area and have
been followed by other courts.  This Court finds them persuasive in the case at bar."); *In re ITT
Derivative Litig. v. ITT Corp.*, 932 N.E.2d 664, 668 (Ind. 2010) (Indiana Supreme Court looks to

8

discussed and applied Delaware shareholder derivative law to a Delaware corporation. *Berry,* 2011 WL 1144697. The Delaware Supreme Court has stated that the specific facts alleged must create a reasonable doubt that a majority of the directors are independent. *Berry*, 2011 WL 1144697 at *7 (citing *Aronson v. Lewis*, 473 A.2d 805, 814 (Del. 1984), *overruled on other grounds by Brehm*, 746 A.2d at 253).[5] To demonstrate lack of independence, a plaintiff must allege, with particularity, factual allegations from which a court can infer that the board members in question "are acting at the direction of the allegedly dominating individual or entity." *Id.* at *11 (quoting *Heineman v. Datapoint Corp.*, 611 A.2d 950, 955 (Del. 1992), *overruled on other grounds by Brehm*, 746 A.2d at 253). Merely alleging "that directors are dominated and controlled does not raise, per se, a reasonable doubt as to the board's independence and thus will not suffice to meet the demand-futility standard." *Id.* at *10. A director is independent if he will act "based on the corporate merits of the subject before the board rather than extraneous considerations or influences," but he is not independent if he

---

Delaware law in derivative cases because Ind. Code § 23-1-32-2 and its official comments provide only a "modest explanation"); *In re F5 Networks, Inc.,* 207 P.3d 433, 434 (Wash. 2009) ("Washington follows the Delaware demand futility standard . . . ."); *see also Kamen v. Kemper Fin. Servs., Inc.,* 939 F.2d 458, 461 (7th Cir. 1991) ("Delaware [is] today's dominant corporate jurisdiction . . . .").

[5]In addition to independence, Delaware courts also require a plaintiff to plead specific facts that would create a reasonable doubt that a majority of the directors are disinterested. *Id.* The further explication of "disinterested" by the Delaware Supreme Court indicates that this analysis is similar to *Morgan*'s first and third demand futility possibilities listed above (i.e. it has to do with director participation, profit, and wrongdoing). *See id.* at *10. Thus, it would appear that Delaware takes a stricter approach to demand futility than Arkansas: whereas Arkansas seemingly only requires a lack of independence *or* interest to excuse demand, Delaware requires both. This is not unusual, as a fellow district court once noted that "the decisions of various courts [on demand questions] fall across a wide spectrum ranging from a 'hard-boiled' approach requiring strict proof of futility . . . to a more lenient standard . . . ." *Jordon v. Bowman Apple Prods. Co.*, 728 F. Supp. 409, 413 (W.D. Va. 1990). Also, notably, American Composting agrees with this Court's interpretation that Arkansas law only requires a plaintiff to "create a reasonable doubt that Perry and Steinmetz are not disinterested or independent." Document #17, at 7.

is "beholden" to an interested director or so under the interested director's influence that his discretion is sterilized. *Rales v. Blasband*, 634 A.2d 927, 936-37 (Del. 1993) (citations omitted).

Weinberger first alleges that Steinmetz and Perry are not independent because Willits, as the controlling majority shareholder, elected them to office and can reverse any decision they make or remove them from office at will. Certainly, as American Composting points out, this position of power by itself is probably not enough to demonstrate a lack of independence on the part of other directors. *See Kaster v Modification Sys., Inc.,* 731 F.2d 1014, 1019-20 (2nd Cir. 1984) ("We are thus unwilling to say that ownership of a majority of shares by the alleged wrongdoer automatically makes a demand on the directors futile."); *Kaufman v. Belmont,* 479 A.2d 282, 287 (Del. Ch. 1984) (similar); *Heineman,* 611 A.2d at 955 (similar); *Aronson,* 473 A.2d at 816 ("[I]t is not enough to charge that a director was nominated by or elected at the behest of those controlling the outcome of a corporate election. That is the usual way a person becomes a corporate director. It is the care, attention and sense of individual responsibility to the performance of one's duties, not the method of election, that generally touches on independence.").

Nevertheless, Weinberger has also provided detailed factual allegations concerning the surrounding circumstances of this case, allegations that create a reasonable doubt as to the independence of Steinmetz and Perry. Accepting Weinberger's allegations as true, not long after Weinberger first notified Willits of her intent to file a shareholder derivative suit, Willits called a special shareholder meeting with the stated purpose of expanding the board of directors—apparently for the first time ever. At that same meeting, Willits would amend American Composting's articles and by-laws to allow such an expansion, while at the same time removing the requirement in the by-laws that action be taken only at a meeting unless Weinberger's consent was obtained. Had Willits

remained the only director, a demand would almost certainly have been futile on Weinberger's part because she would have needed to demand that the alleged wrongdoer prosecute the action against himself. *See Magale v. Fomby*, 132 Ark. 289, 201 S.W. 278, 281 (1918) ("[If] the corporation is under the control of the guilty parties . . . then the stockholder himself may bring suit in equity in his own behalf . . . ."); *Ono*, 884 F. Supp. at 899 (demand unnecessary where alleged wrongdoer controlled 50 percent of the board). Thus, adding two directors provided Willits with a colorable possibility of avoiding a shareholder derivative suit—a possibility that did not previously exist. These specific circumstances and the fact that Willits maintains the ultimate power over the board of directors create a reasonable doubt as to whether Perry and Steinmetz are truly independent, or whether they were selected as a subterfuge to avoid a shareholder derivative suit. *See Jordon*, 728 F. Supp. at 414 (demand futile where shareholder controlled 75 percent of company and other factors existed, such as evidence that majority shareholder was "vehemently opposed to the plaintiff's position"). These additional factual pleadings distinguish the present situation from cases such as *Kaster*, *Kaufman*, *Heineman*, and *Aronson*, where there were no allegations that the board members—and, indeed, the board positions—in question were added by the majority shareholder in response to the threat of a shareholder derivative suit. On the contrary, the Second Circuit in *Kaster* stated that "the reaction of the majority shareholder to those who oppose him" is a factor to be considered in analyzing control and demand futility. 731 F.2d at 1020. In *Aronson*, the court stated that the method of election does not generally touch on independence, but the court there was referring to the general, everyday-course-of-business selection of a director by a majority shareholder, which is the "usual way a person becomes a corporate director." 473 A.2d at 816. Here, the first-

time-ever expansion of the board and selection of two directors was in response to the pressing possibility of a shareholder derivative suit.  As a fellow district court once noted:

> [T]he court should not cajole itself into believing that the members of a Board of Directors elected by the dominant and accused majority Stockholder, *after accusations of wrongdoing have been made*, were selected for membership on the Board to protect the interests of the minority stockholders and to assure a vigorous prosecution of effective litigation against the offending majority.

*deHaas v. Empire Petroleum Co.*, 286 F. Supp. 809, 814 (D. Colo. 1968) (quotation omitted) (emphasis added)).

While Willits stated, in proposing the addition of Perry and Steinmetz, that his intent was to bring in independent board members to continue the investigation into the allegations that the corporation had claims against him, the Court need not credit that statement of intent in ruling on the present motion.  As noted above, the Court must draw all reasonable inferences from facts alleged in the complaint in favor of Weinberger.  A reasonable person easily could disbelieve Willits' claim that, when confronted with an allegation that he used corporate funds for personal expenses, he decided to select two impartial, independent persons to serve on the board and make an independent decision as to whether the allegations were true.  Nowhere in American law is the accused, after being accused, allowed to select the person who will decide whether he is guilty or whether to prosecute the claim.[6]  Moreover, the argument does not explain why it was also necessary for Willits to alter the by-laws to elect these directors at a special meeting and essentially to remove Weinberger

---

[6]The nearest case is arbitration, in which both sides jointly select a neutral arbitrator or, if a panel of three will be convened, both sides select one arbitrator and those two then select the third. Here, one side of the intra corporate dispute was completely excluded from the process of selecting the two new "independent members . . . who may immediately continue the investigation of . . . Willits[.]"

altogether from the American Composting decision-making process.  These actions cast a shadow on the proceedings at American Composting.

American Composting's motion to dismiss is denied.  Documents #8, #16.  Weinberger's motion for leave to amend her complaint is denied as moot.  Document #20.

IT IS SO ORDERED this 9th day of April, 2012.

_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE